UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMAZON.COM INC., et al., | CASE NO. C24-1188-KKE |
| Plaintiff(s), | ORDER GRANTING MOTION FOR DEFAULT JUDGMENT |
| v. | |
| MICHAEL BARTLEY, et al., | |
| Defendant(s). | |

Plaintiff The Ergo Baby Carrier, Inc. ("Ergo") created and designed babywearing carriers that are sold by more than 700 retailers in the United States and more than 50 other countries. Dkt. No. 49 ¶ 3. Together with Plaintiffs Amazon.com, Inc. and Amazon.com Services LLC (collectively "Amazon"), Ergo filed this action alleging that Defendants—"a collection of individuals and entities who conspired and operated in concert with each other to engage in the counterfeiting scheme alleged in this [action]"—sold counterfeit Ergo products in Amazon's store. *Id.* ¶¶ 5, 9.

Plaintiffs have dismissed their claims against some of the Defendants. Dkt. Nos. 55, 56, 57, 59, 77, 78, 79, 88. Defendants Sebastian Gonzales Rojas and Seymour Watson (doing business as Ethanmour Holdings LLC) have not appeared or otherwise defended this action, and the Court entered orders of default against them. Dkt. Nos. 70, 74. Plaintiffs now seek a default judgment and permanent injunction against those two Defendants (hereinafter "Defaulted Defendants").

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 1

Dkt. No. 82. [1]  Because Plaintiffs have shown that they are entitled to default judgment on their claims against the Defaulted Defendants, and the Court will grant Plaintiffs' motion and award the damages and injunctive relief Plaintiffs request.

## I.    BACKGROUND

Plaintiffs' operative complaint alleges that between May 5, 2021, and February 7, 2024, Defendants advertised, marketed, offered, distributed, and/or sold counterfeit Ergo-branded products via multiple Amazon Selling Accounts, using marks owned by Ergo ("Ergobaby Trademarks") without authorization to deceive customers about the authenticity and origin of the products and the products' affiliation with Ergo.  Dkt. No. 49 ¶¶ 41–62.  In this action, Ergo asserts claims for trademark counterfeiting and infringement against all Defendants.  *Id*. ¶¶ 63–69.  All Plaintiffs also bring claims against all Defendants for false designation of origin and for violation of Washington's Consumer Protection Act ("CPA").  *Id*. ¶¶ 70–85, 112–16.  Plaintiffs also bring contributory trademark infringement and contributory false designation of origin claims against Watson.  *Id*. ¶¶ 86–111.  Amazon.com Services LLC ("Amazon Services") separately brings a breach of contract claim against Rojas.  *Id*. ¶¶ 117–22.

For the following reasons, the Court will grant Plaintiffs' motion for default judgment against the Defaulted Defendants.  Dkt. No. 82.

## II.    ANALYSIS

**A.    The Court Has Jurisdiction over the Subject Matter and the Parties.**

Before entering default judgment, the Court must confirm that it has both subject matter and personal jurisdiction.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has

---

[1] The Court refers to the parties' briefing by CM/ECF page number.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 2

an affirmative duty to look into its jurisdiction over both the subject matter and the parties.").

The Court has federal question jurisdiction over Plaintiffs' claims for trademark infringement, false designation of origin, and false advertising. Dkt. No. 49 ¶ 22. The Court also has personal jurisdiction over Defendants. A forum selection clause alone can confer personal jurisdiction. *Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406–07 (9th Cir. 1994). The Business Solutions Agreement ("BSA") between Amazon and Rojas provides that Amazon may bring claims related to counterfeit products in the "Governing Courts," and the BSA defines "Governing Courts" as any state or federal court in King County, Washington, which includes this Court. Dkt. No. 49 ¶ 24. The Court also has personal jurisdiction over both Rojas and Watson because they purposefully directed their unlawful activities toward, and consummated transactions in, Washington. *Id*. ¶¶ 23, 25–26.

Accepting Plaintiffs' factual allegations as true, the Court has jurisdiction over the claims presented in this lawsuit as well as the Defaulted Defendants.

**B.    Legal Standards on a Motion for Default Judgment**

The Court's decision to enter a default judgment is discretionary. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The Court "ordinarily disfavor[s]" default judgment because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). In considering a motion for default judgment, the Court accepts "the well-pleaded factual allegations" as true, but "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citation modified).

When considering whether to exercise its discretion to enter a default judgment, the Court may consider the following *Eitel* factors:

(1) the possibility of prejudice to the plaintiff,

(2) the merits of plaintiff's substantive claim,
(3) the sufficiency of the complaint,
(4) the sum of money at stake in the action;
(5) the possibility of a dispute concerning material facts;
(6) whether the default was due to excusable neglect, and
(7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel*, 782 F.2d at 1471–72.

The Western District of Washington also requires a party seeking default judgment to provide "a declaration and other evidence establishing plaintiff's entitlement to a sum certain and to any nonmonetary relief sought." Local Civil Rules W.D. Wash. LCR 55(b)(2). "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

**C.      Plaintiffs are Entitled to Default Judgment Against the Defaulted Defendants.**

The Court applies the *Eitel* factors to this case and finds that they favor a default judgment as requested by Plaintiffs.

*1.      Possibility of Prejudice to Plaintiffs*

For the first *Eitel* factor, the Court analyzes the possibility of prejudice to Plaintiffs. Prejudice exists when "the plaintiff has no recourse for recovery other than default judgment." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1211 (W.D. Wash. 2014) (cleaned up).

In this case, the Defaulted Defendants have failed to respond to or otherwise defend against Plaintiffs' complaint. Without a default judgment, Plaintiffs would have no recourse. Therefore, the Court finds the first *Eitel* factor favors a default judgment.

*2.      Sufficiency and Merits of Plaintiffs' Complaint*

The Court analyzes the second and third *Eitel* factors—the merits of Plaintiffs' substantive claim and the sufficiency of the complaint—together. *See, e.g.*, *Curtis*, 33 F. Supp. 3d at 1211. For the following reasons, the Court finds that Plaintiffs have alleged facts in their complaint

showing that the Defaulted Defendants are liable on the claims upon which default judgment is requested.

a.    Ergo's Trademark Counterfeiting and Infringement Claim

As noted above, Ergo alleges that Defendants counterfeited and infringed the Ergobaby Trademark in violation of 15 U.S.C. § 1114.  Dkt. No. 49 ¶¶ 63–69.

To prevail on a trademark infringement claim under the Lanham Act, 15 U.S.C. § 1114, a plaintiff must show that the defendant used (1) a reproduction, counterfeit, copy or colorable imitation of the plaintiff's registered trademark; (2) without the plaintiff's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to cause confusion, or to cause a mistake or to deceive. *Amazon.com v. Kurth*, No. 2:18-cv-00353-RAJ, 2019 WL 3426064, at *2 (W.D. Wash. July 30, 2019).

For the fifth element—the likelihood of confusion—a court tests whether the defendant's use of the plaintiff's trademark is likely to confuse a reasonably prudent consumer in the marketplace as to the origin of the product.  *Dreamwerks Prod. Grp., Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).  However, counterfeit marks are inherently confusing.  *See Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) ("[C]onfusing the customer is the whole purpose of creating counterfeit goods.").  Therefore, a plaintiff can establish likelihood of confusion by showing that the infringing mark is counterfeit.  *Coach, Inc. v. Pegasus Theater Shops*, No. C12-1631-MJP, 2013 WL 5406220, at *3 (W.D. Wash. Sept. 25, 2013).

Accepting Plaintiffs' allegations as true, the Court finds that Ergo has sufficiently stated its claim against the Defaulted Defendants.  Ergo owns the Ergobaby Trademarks, and the Defaulted Defendants used the counterfeit Ergobaby marks without Ergo's consent in commerce.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 5

Dkt. No. 49 ¶¶ 65–67.  As the Defaulted Defendants used counterfeit Ergobaby marks, their use of the marks is inherently confusing.  Therefore, the Court finds the second and third *Eitel* factors favor a default judgment for Ergo on its trademark counterfeiting and infringement claim.

                    b.        Ergo's False Designation of Origin Claim

Ergo brought a claim against Defendants for false designation of origin under 15 U.S.C. § 1125(a)(1)(A).  Dkt. No. 49 ¶¶ 70–78, Dkt. No. 82 at 14 n.6.

To prevail on a claim for false designation of origin, "a plaintiff must prove that the defendant 1) used in commerce 2) any word, false designation of origin, false or misleading description, or representation of fact, which 3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul Tech. Inc. v. Nectarlux, LLC*, 78 F. Supp. 3d 1156, 1170 (N.D. Cal. 2015).  Again, because counterfeit marks are inherently confusing, a plaintiff can show likelihood of confusion by showing the infringing mark is counterfeit. *Coach*, 2013 WL 5406220, at *3.

Accepting the allegations in Plaintiffs' complaint as true, the Court finds that Ergo has shown that the Defaulted Defendants are liable on the claim for false designation of origin.  Ergo owns the Ergobaby Trademark.  Dkt. No. 49 ¶ 71.  The Defaulted Defendants sold or distributed counterfeit products bearing the Ergobaby Trademark in commerce.  *Id*. ¶ 73.  Because the products sold or distributed by the Defaulted Defendants are counterfeit, they are likely to confuse or deceive as to the origin of the goods.  *Id*. ¶ 74.  For these reasons, the second and third *Eitel* factors favor a default judgment for Ergo on its false designation of origin claim.

                    c.        Amazon's False Designation of Origin Claim

Amazon brings a claim for false designation of origin against Rojas under 15 U.S.C. § 1125(a)(1)(A).  Dkt. No. 49 ¶¶ 79–85, Dkt. No. 82 at 14 n.6.

A plaintiff is not required to own the trademarks that are infringed in order to state a claim under 15 U.S.C. § 1125(a). *See Obesity Rsch. Inst., LLC v. Fiber Rsch. Int'l, LLC*, 310 F. Supp. 3d 1089, 1114 (S.D. Cal. 2018). As noted earlier in this order, to prevail on a claim for false designation of origin, "a plaintiff must prove that the defendant 1) used in commerce 2) any word, false designation of origin, false or misleading description, or representation of fact, which 3) is likely to cause confusion or mistake, or to deceive, as to sponsorship, affiliation, or the origin of the goods or services in question." *Luxul*, 78 F. Supp. 3d at 1170. And again, because counterfeit marks are inherently confusing, a plaintiff can show likelihood of confusion by showing the infringing mark is counterfeit. *Coach*, 2013 WL 5406220, at *3.

Amazon alleges that Rojas's deceptive acts jeopardized its customers' trust in Amazon, tarnished Amazon's brand and reputation, and harmed Amazon and its customers. Dkt. No. 49 ¶ 83. Amazon has stated a claim against Rojas for false designation of origin, and the Court finds that the second and third *Eitel* factors favor a default judgment on this claim.

        d.      <u>Ergo's Contributory Trademark Infringement Claims and Plaintiffs' Contributory False Designation of Origin Claims</u>

Ergo brings a claim against Watson for contributory trademark infringement and all Plaintiffs bring claims for contributory false designation of origin against him. Dkt. No. 49 ¶ 86–111, Dkt. No. 82 at 15 n.7.

To prevail on a claim for contributory trademark infringement or contributory false designation of origin, a plaintiff must show that the defendant (1) intentionally induced the primary Lanham Act violation, or (2) continued to supply a product or service to an infringer with knowledge that the infringer is mislabeling the particular product supplied. *Inwood Laby's, Inc. v. Ives Laby's, Inc.*, 456 U.S. 844, 854 (1982); *AK Futures LLC v. LCF Labs Inc.*, No. 8:21-cv-02121-JVS-ADS, 2022 WL 17883832, at *6 (C.D. Cal. Dec. 7, 2022).

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 7

Here, Plaintiffs allege that Watson intentionally supplied products to other Defendants bearing counterfeit Ergobaby Trademarks, and that Watson knew, intended, and encouraged other Defendants to resell those products in Amazon's store, where he knew those products would mislead and confuse customers and wrongfully trade on Ergo's goodwill and business reputation. Dkt. No. 49 ¶¶ 90–91, 102, 104.  Plaintiffs have stated claims against Watson for contributory trademark infringement and contributory false designation of origin, and the Court finds that the second and third *Eitel* factors favor a default judgment on these claims.

      e.      <u>Plaintiffs' CPA Claim</u>

"To state a claim under the CPA, a plaintiff must allege: '(1) [an] unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; [and] (5) causation.'"  *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 976 (9th Cir. 2016) (quoting *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 535 (Wash. 1986)).  "Absent unusual circumstances, the analysis of a CPA claim will follow that of the trademark infringement and unfair competition claims; it will turn on the likelihood of confusion regarding a protectable mark." *Safeworks, LLC v. Teupen Am., LLC*, 717 F. Supp. 2d 1181, 1192 (W.D. Wash. 2010).

As the Court has found that Plaintiffs have sufficiently stated their trademark infringement claim and false designation of origin claims, and alleged that the Defaulted Defendants used counterfeit versions of the Ergobaby marks that are inherently confusing, the Court finds that Plaintiffs have stated a claim for violation of the CPA as well.  *See* Dkt. No. 49 ¶¶ 112–16. Therefore, the Court finds that the second and third *Eitel* factors favor a default judgment for Plaintiffs on the CPA claim.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 8

f.      Amazon Services' Breach of Contract Claim Against Rojas

To prevail on a breach of contract claim, a plaintiff must show (1) a valid contract existed between the parties, (2) the contract was breached, and (3) damages resulted. *Lehrer v. State, Dep't of Soc. & Health Servs.*, 5 P.3d 722, 727 (Wash. Ct. App. 2000).

The complaint establishes all three of these elements. First, Amazon Services alleges that when Rojas established his GG Store! Selling Account, he agreed to the BSA and Amazon's anti-counterfeiting policy and other policies, and these contracts are valid. Dkt. No. 49 ¶¶ 41–47. Second, Amazon Services alleges that Rojas's sale of counterfeit Ergobaby-branded products constituted a material breach of the BSA. *Id.* ¶¶ 118–21. Third, Amazon Services alleges that Rojas's breach resulted in harm in the form of $20,313.00 in unreimbursed refunds. *Id.* ¶ 122, Dkt. No. 87 ¶ 5. Accepting these allegations as true, Amazon Services has sufficiently stated its claim for breach of contract. The Court thus finds the second and third *Eitel* factors favor a default judgment for Amazon Services on its breach of contract claim.

### 3.      The Sum of Money at Stake

For the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the defendant's conduct. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1176 (C.D. Cal. 2002). The Court also assesses whether the amount of monetary damage requested is proportional to the harm caused by the defendant. *See Curtis*, 33 F. Supp. 3d at 1212.

In this case, Plaintiffs allege that the Defaulted Defendants willfully infringed Ergo's trademarks and sold a total of $91,599.00 of counterfeit products in Amazon's store. *See* Dkt. No. 87 ¶ 4. Plaintiffs request that the Court award Ergo three times that total amount as statutory damages under the Lanham Act, and award Amazon its actual damages totaling $67,103.00. Dkt. No. 82 at 18–22. The amounts Plaintiffs seek to recover are substantial, but proportional to the

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 9

scale of the misconduct alleged, and the Court finds that this factor therefore favors entry of a default judgment.

### 4. Possibility of Dispute over Material Facts

For the fifth *Eitel* factor, the Court considers the possibility of disputes concerning material facts. *Eitel*, 782 F.2d at 1471–72. Upon default, a plaintiff's factual allegations of the complaint will be taken as true. *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977). Because the Defaulted Defendants failed to appear or otherwise respond, they have failed to rebut Plaintiffs' allegations or evidence provided to support their claims. Therefore, given that no dispute of material facts is apparent, the Court finds that the fifth *Eitel* factor favors entry of a default judgment.

### 5. Possibility of Excusable Neglect

For the sixth *Eitel* factor, the Court assesses whether the defendant's default was due to excusable neglect. Because Plaintiffs have submitted evidence to support their attempts to serve the Defaulted Defendants, and yet the Defaulted Defendants have made no apparent effort to respond by the deadline and the Court found them to be in default, the Court finds that the sixth *Eitel* factor favors entry of a default judgment. *See Landstar Ranger, Inc. v. Parth Enters.*, 725 F. Supp. 2d 916, 922 (C.D. Cal. 2010).

### 6. Policy in Favor of Decision on the Merits

For the seventh *Eitel* factor, the Court addresses the strong policy preference in favor of resolution of Plaintiffs' claims on the merits. *See Eitel*, 782 F.2d at 1472 ("Cases should be decided upon their merits whenever reasonably possible."). However, a defendant's "failure to answer Plaintiffs' Complaint makes a decision on the merits impractical, if not impossible." *PepsiCo*, 238 F. Supp. 2d at 1177.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 10

Thus, although the Court's preference for resolving issues on their merits weighs against entry of a default judgment, this factor is outweighed by the other *Eitel* factors, as summarized here. Accordingly, the Court finds that Plaintiffs' motion for default judgment should be granted.

**D.     Ergo Is Entitled to Statutory Damages, and Amazon Is Entitled to Actual Damages.**

Having found that Plaintiffs are entitled to entry of a default judgment, the Court now turns to consider the relief requested by Plaintiffs.

*1.      Statutory Damages to Ergo*

The Lanham Act provides for three types of remedies in counterfeit trademark cases. *See Y.Y.G.M. SA v. Redbubble, Inc.*, 75 F.4th 995, 1007 (9th Cir. 2023).

> When a plaintiff establishes a violation of any registered mark, subsection (a) makes available to the plaintiff, subject to equitable considerations, "(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." [15 U.S.C.] § 1117(a). For intentional violations, subsection (b) provides for "three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee" and further specifies that "the court may award prejudgment interest on such amount[.]" § 1117(b). Subsection (c) allows a plaintiff to elect, "instead of actual damages and profits under subsection (a), an award of statutory damages" between $1,000 and $200,000 per counterfeit mark, or for a willful violation, up to $2,000,000 per counterfeit mark. § 1117(c).

*Id*. A willful trademark infringement occurs when "the defendant's actions are willfully calculated to exploit the advantage of an established mark." *DC Comics v. Towle*, 802 F.3d 1012, 1026 (9th Cir. 2015) (quoting *Lindy Pen Co., Inc. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir. 1993)). As the Court accepts all factual allegations as true when resolving a motion for default judgment, the Court accepts a plaintiff's allegation of a defendant's willful infringement. *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008).

Plaintiffs allege in their complaint that the Defaulted Defendants acted willfully by intentionally causing customer confusion regarding the origin and authenticity of the products sold. *See* Dkt. No. 49 ¶¶ 59, 76, 83, 87, 92–93. With respect to this willful infringement, Ergo elects to

recover statutory damages. Dkt. No. 82 at 18–21. Specifically, Ergo requests an award of statutory damages of $80,523.00 against Rojas (representing three times Rojas's alleged aggregate sales of $26,841.00 in counterfeit Ergobaby products), plus and an award of statutory damages of $194,274.000 against Watson (representing three times the aggregate sales of counterfeit products supplied by Watson). Dkt. No. 82 at 18–21.

To calculate statutory damages for willful infringement, courts consider the need to: (1) "compensate" the plaintiffs for the damage the defendant's actions caused; (2) "deter" the defendants from violating the trademarks; and (3) "punish" the defendants for willfully violating the trademarks. *See Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1124 (C.D. Cal. 2007). The Court finds that the statutory damages requested by Ergo will compensate it for the harm caused by the Defaulted Defendants' conduct, punish the Defaulted Defendants for that conduct, and deter similar conduct in the future. Accordingly, the Court will award Ergo the statutory damages it requests.

### 2. Actual Damages to Amazon

Amazon seeks to recover the actual damages for Rojas's breach of the BSA and both Defaulted Defendants' Lanham Act violations. Dkt. No. 82 at 21–22. Upon discovering that Rojas and other Defendants breached the BSA by selling counterfeit products, Amazon Services shut down those Selling Accounts and issued refunds to customers who purchased counterfeit Ergobaby-branded products sold by Rojas and/or supplied by Watson. *Id*. at 21. Amazon Services alleges that Rojas has not fully reimbursed Amazon to cover the refunds it issued, although he agreed to do so in the BSA. *Id*.

As discussed earlier in the previous subsection, the Lanham Act authorizes courts to award "any damages sustained by the plaintiff" arising from a defendant's false designation of origin. 15 U.S.C. § 1117(a). Amazon alleges that it incurred losses in refunding customers that were caused

by Rojas's sale of counterfeit products and Watson's supply of counterfeit products. *See* Dkt. No. 49 ¶ 62. Amazon has submitted evidence showing that these losses were foreseeable to Rojas as he agreed to reimburse them in the BSA, and to Watson because he recruited others specifically to sell in Amazon's store. *See* Dkt. No. 49-2 § 6.1, Dkt. No. 85 ¶ 2. Amazon seeks an award of $20,313.00 for unreimbursed refunds against Rojas, and $46,790.00 for unreimbursed refunds against Watson. Dkt. No. 87 ¶ 5. The Court finds that Amazon is entitled to recover these actual damages in the amount requested.

**E.     Plaintiffs Are Entitled to a Permanent Injunction.**

Plaintiffs request the Court permanently enjoin Defendants from:

a. selling counterfeit or infringing products in Amazon's stores;
b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;
c. importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of Ergo's brand or trademarks, or which otherwise infringes Ergo's intellectual property, in any store or in any medium;
d. offering, selling, supplying, or otherwise providing any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of Ergo's brand or trademarks, or which otherwise infringes Ergo's intellectual property, on any platform or in any medium; and
e. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (d) above.

*See* Dkt. No. 82-1 at 3.

The Court has authority under 15 U.S.C. § 1116(a) to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable to prevent the violation of any right of the trademark owner. *Reno Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006). In addition, the CPA also allows parties to seek a permanent injunction to prevent further violations. WASH. REV. CODE § 19.86.090. A plaintiff seeking a permanent injunction must satisfy the following four elements. First, the plaintiff must show that it has suffered an irreparable injury. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Second, the

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 13

plaintiff must show that remedies available at law, such as monetary damages, are inadequate to compensate for the irreparable injury. *Id*. Third, the plaintiff must show that a remedy in equity is warranted considering the balance of hardships between the plaintiff and defendant. *Id*. Fourth, the plaintiff must show that the public interest would not be disserved by a permanent injunction. *Id*.

The Court finds that Plaintiffs have satisfied the first element. A finding that Ergo's trademark has been infringed creates a rebuttable presumption that it suffered an irreparable injury. *See* 15 U.S.C. § 1116; *T-Mobile USA, Inc. v. Terry*, 862 F. Supp. 2d 1121, 1133 (W.D. Wash. 2012). Amazon has also alleged that selling or facilitating the sale of counterfeit products in its store irreparably harms its business, reputation, and goodwill. *See* Dkt. No. 49 ¶ 30.

Plaintiffs also have satisfied the second element because they have shown that remedies at law are inadequate to compensate for their irreparable injury. Generally, monetary damages alone are inadequate to remedy trademark infringement. *Treemo, Inc. v. Flipboard, Inc.*, 53 F. Supp. 3d 1342, 1367 (W.D. Wash. 2014). Plaintiffs have alleged damage to their businesses, reputations, and goodwill that cannot be fully resolved via monetary damages. Dkt. No. 49 ¶ 30, Dkt. No. 84 ¶ 7.

Plaintiffs have satisfied the third element as well, as a balancing of hardship warrants a permanent injunction. On one hand, there is no legitimate interest in selling counterfeit products. *T-Mobile*, 862 F.Supp.2d at 1133–34. Therefore, there is no hardship for the Defaulted Defendants in this case. On the other hand, there are substantial threats to Plaintiffs' business reputation if the Court does not enjoin the Defaulted Defendants' illegal actions. Thus, the balance of hardship tips in favor of Plaintiffs.

Finally, Plaintiffs have satisfied the fourth element, because a permanent injunction in this case would promote the public interest. A permanent injunction will benefit the public by

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 14

preventing likelihood of confusion to consumers and minimizing the risk of purchasing fraudulent merchandise. *Treemo*, 53 F. Supp. 3d at 1368.

Because Plaintiffs have satisfied all four elements for a permanent injunction, the Court will grant Plaintiffs' request for a permanent injunction against Defendants.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion for default judgment. Dkt. No. 82.

1. Judgment is entered as follows against Rojas on (1) Ergo's claims for (a) trademark infringement and trademark counterfeiting, and (b) false designation of origin; (2) Amazon's claim for false designation of origin; (3) Plaintiffs' claim for violation of the CPA; and (4) Amazon.com Services' claim for breach of contract.

2. Judgment is entered as follows against Watson on (1) Ergo's claims for (a) trademark infringement and trademark counterfeiting, and (b) false designation of origin; (2) Ergo's claim for contributory trademark infringement and contributory false designation of origin, (3) Amazon's claim for contributory false designation of origin; and (4) Plaintiffs' claim for violation of the CPA.

3. The Court awards Ergo a total of $274,797.00 in statutory damages for each Defaulted Defendant's willful violations of the Lanham Act, as follows:

   a. An award of $80,523.00 against Rojas for counterfeit sales from the following Selling Account: GG Store!; and

   b. An award of $194,274.00 against Watson for his supply of counterfeit products for the following Selling Accounts: SuttonlyProducts and Nekio LLC;

4. The Clerk is directed to enter judgment against the Defaulted Defendants and in favor of Ergo for the amounts set forth above.

5. The Court awards Amazon Services a total of $20,313.00 in actual damages, for Rojas's breach of contract for counterfeit sales from the following Selling Account: GG Store!.

6. The Court awards Amazon $46,790.00 in actual damages against Watson for Amazon's damages arising from his supply of counterfeit products for the following Selling Accounts: SuttonlyProducts and Nekio LLC.

7. The Clerk is directed to enter judgment against the Defaulted Defendants and in favor of Amazon.com Services LLC and/or Amazon.com Inc. for the amounts set forth above.

8. Defendants and their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them who receive actual notice of the order, are hereby permanently ENJOINED AND RESTRAINED from:

   a. selling counterfeit or infringing products in Amazon's stores;

   b. selling counterfeit or infringing products to Amazon or any Amazon affiliate;

   c. importing, manufacturing, producing, distributing, circulating, offering to sell, selling, promoting, or displaying any product using any simulation, reproduction, counterfeit, copy, or colorable imitation of Ergo's brand or trademarks, or which otherwise infringes Ergo's intellectual property, in any store or in any medium; and

   d. assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (c) above.

9. The Court hereby retains jurisdiction over this case for the purpose of enforcing this Order and Injunction, and for any supplemental proceedings that may be authorized by law.

ORDER GRANTING MOTION FOR DEFAULT JUDGMENT - 16

10. Plaintiffs' counsel is hereby directed to serve a copy of this Order and Injunction on Defendants' last known email addresses registered with Amazon, which Plaintiffs used to complete service.

Dated this 30th day of June, 2026.

Kymberly K. Evanson
United States District Judge